## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KAREN JEAN M.,[1]                    )
                                     )
            Plaintiff,               )
                                     )          CIVIL ACTION
v.                                   )
                                     )          No. 19-2455-JWL
ANDREW M. SAUL,                      )
Commissioner of Social Security,     )
                                     )
            Defendant.               )
_____    )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the

Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be

entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the

Commissioner's final decision.

## I.     Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff's quest for DIB and SSI has undergone a tortuous path over the last nine years. She filed applications for benefits in August 2011. (R. 185-97). Plaintiff's applications have been thrice considered and denied in proceedings before the Social Security Administration (SSA). (R. 858-76 (first decision, ALJ Christine A. Cooke, 4/25/2014), 1832-68 (third, current, decision, ALJ Timothy G. Steuve, 4/09/2019), 1896-1928 (second decision, ALJ Michael Comisky, 6/02/2016)). Plaintiff has appealed each denial for judicial review in this court pursuant to 42 U.S.C. § 405(g). (R. 916-32, 1929-44); (Doc. 1).

The first reviewing court remanded for further proceedings because it found a conflict between the vocational expert's (VE) testimony (that Plaintiff was capable of performing representative jobs requiring reasoning level two or three) and the residual functional capacity (RFC) assessed by ALJ Cooke and presented to the VE (which specifically noted that Plaintiff "should never be expected to understand, remember, or carry out detailed instructions"). (R. 930). On remand, ALJ Comisky assessed a mental RFC to "understand, remember and carry out work instructions and tasks at an SVP [(specific vocational preparation)] 2 level. She can have occasional contact with coworkers, supervisors, and the general public." (R. 1906). Plaintiff once again appealed, and a different judge of this court recognized that ALJ Comisky's hypothetical question was worded differently than the RFC assessed and limited Plaintiff to "understand, remember and carry out simple work instructions and tasks at an SVP 2 level" (R. 1936) (quoting R. at 853) (emphasis added by the second court at R. 1936), and

found once again that the representative jobs relied upon required reasoning levels of two

or three which require execution of detailed instructions.  (R. 1936-37).  The court stated,

"The ALJ did not indicate to the VE that plaintiff could understand, remember and carry

out detailed instructions.  The ALJ also failed to state to the VE that the ALJ, through his

hypothetical, was not intending to exclude consideration of occupations requiring

execution of detailed instructions."  (R. 1937-38).  The court found that the ALJ was

required by the Tenth Circuit's decision in <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1176

(10th Cir. 2005) "to address the apparent conflict between plaintiff's limitation to

performing simple work instructions and tasks and the level-three reasoning" required by

the mail clerk job relied upon by the ALJ.  (R. 1939).  The court relied upon the ALJ's

hypothetical question regarding "simple work instructions," upon an unpublished opinion

of the Tenth Circuit, and upon a published opinion of the Eighth Circuit holding that a

limitation to simple instructions is inconsistent with both level two and level three

reasoning, and found remand was necessary "in order for the ALJ to inquire about and

resolve the conflict between the VE's testimony and the description of the job[s] in the

DOT [(<u>Dictionary of Occupational Titles</u>)]."  (R. 1941).

On remand, ALJ Stueve handled the case, accepted additional evidence, held

another supplemental hearing, and issued a decision denying benefits.  (R. 1832-68).

Plaintiff has once again appealed to this court, claiming that the ALJ erroneously failed to

consider all the opinion evidence and relied on numerous stale opinions, that both the

physical RFC and the mental RFC assessed are not supported by substantial evidence,

3

and that ALJ Stueve once again failed to resolve conflicts between the VE testimony and the information in the DOT.

## II.    Standard of Review

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett, 395 F.3d at 1172; see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994)

(The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses each issue in the order presented in Plaintiff's Brief.

## III.   Whether the ALJ Erred in Failing to Consider All the Opinion Evidence

Plaintiff argues the ALJ failed to consider and accord weight to all opinions in the record.  She argues he missed or ignored the opinions of Dr. Halphen, Dr. Pakseresht, and CM (case manager) Johnson.  (Pl. Br. 31).  The court finds no reversible error in these allegations.  ALJ Stueve explained that he incorporated ALJ Comisky's "detailed summary of medical evidence set forth in the unfavorable decision issued … on June 2, 2016." (R. 1845).  In Judge Comisky's summary of the medical evidence, he included summaries of Dr. Halphen's and Dr. Pakseresht's reports of their physical examinations of Plaintiff.  (R. 1908-10).  And in his summary, Judge Comisky noted that "Dr. Halphen did not offer any opinions regarding the claimant's specific functional physical

6

capabilities or limitations" (R. 1909) and that "Dr. Pakseresht did not offer any opinions

regarding the claimant's specific functional physical capabilities or limitations."  (R.

1910).  Because Judge Stueve specifically incorporated Judge Comisky's summary, he

was no doubt aware that Dr. Halphren and Dr. Paksaresht did not offer opinions

regarding Plaintiff's functional capabilities or limitations.

Plaintiff does not argue that either of the physicians suggested limitations which

were ignored by the ALJ but argues instead that the missing opinions do "not relieve the

ALJ of the obligation to consider and identify the weight given the opinions."  (Reply 1).

She asserts in her Reply Brief that the Commissioner is now arguing that the reports of

Dr. Halphren and Dr. Paksaresht were incomplete, and consequently argues the ALJ had

a duty to contact the physicians and ask them to provide the missing information or revise

the report.  (Reply 1-2) (citing 20 C.F.R. §§ 404.1519n(c)(6), 404.1519p(b),

416.919n(c)(6), 416.919p(b).  She then cites findings in the physicians' reports and

argues, "Had the ALJ properly considered these opinions, the RFC would have been

additionally reduced."  (Reply 2).  Plaintiff's arguments in reply make no sense.  She

does not explain how it is possible for an ALJ to identify the weight given to opinions

which are not opinions.  Moreover, she acknowledges that "20 C.F.R. 404.1519n(c)(6)

provides that a consultative examination is <u>not</u> incomplete where it does not include an

RFC" (Reply 1) (emphasis added), but nonetheless argues that 20 C.F.R. § 404.1519p(b)

"provides that, if any information is missing and the report from a consultative examiner

is not complete, [the Commissioner] will contact the physician and ask the missing

information be provided or the report be revised." (Reply 1-2). As Plaintiff suggests, if a consultative examiner's "report is inadequate or incomplete, [the agency] will contact the medical source who performed the consultative examination, give an explanation of [the agency's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. §§ 404.1519p(b), 416.919p(b). However, as Plaintiff appears to acknowledge, 20 C.F.R. §§ 404.1519n(c)(6) and 416.919n(c)(6) specify that "the absence of a medical opinion in a consultative examination report will not make the report incomplete." Applying the regulations, Dr. Halphren's and Dr. Paksaresht's reports are not incomplete, so the only potential basis for requiring the ALJ to contact the physicians would be if the reports were inadequate. Dr. Halphren's report was completed on September 8, 2012 and Dr. Paksaresht's report was completed May 30, 2015. (R. 523-18, 1422-28). Thereafter, on June 25, 2015 Dr. Tawadros provided an opinion regarding Plaintiff's physical functional limitations based on a review of the entire record up to that date (including the reports of both Dr. Halphren and Dr. Paksaresht) and discussed both reports (identified by date) in her "RFC Additional Explanation." (R. 895-97). In a 2,230-page administrative record including medical evidence from February 2011 through October 2018 and including numerous medical opinions, Plaintiff has not shown, and the court certainly does not find these reports, or the record, are inadequate to evaluate Plaintiff's condition.

Finally, Plaintiff appeals to a two-page report by case manager Brad Johnson, dated July 23, 2013 (R. 753-54), and argues that it was error for the ALJ to fail to discuss

and to state the weight accorded to the opinions contained therein.  Any error in failing to

discover and to accord weight to Mr. Johnson's opinion is harmless.  Mr. Johnson's

report is contained within (2 pages lost in the center of) 58 pages of treatment notes from

Johnson County Mental Health.  (R. 716-73).  The Johnson County Mental Health

treatment notes are also a part of the medical records summarized by ALJ Comisky and

incorporated into the ALJ Stueve's decision in this case.  (R. 1845).  Judge Comisky

noted these records concerned "mental health treatment at Johnson County Mental Health

(JCMH) from April 2013 to November 2013 under the supervisory care of a staff

psychiatrist, Pranahitha Reddy, M.D."  (R. 1911) (citing Exs. 30F, 34F, R. 716-73, 1137-

57).  He noted, "Progress notes from claimant's counseling sessions do not appear to

document significant evidence of a psychotic condition, but rather problems coping with

multiple situational stressors and conflict with family members."  (R. 1911).  The court's

review of these treatment records reveals this is a fair summary and supported by the

record evidence.  The court notes that ALJ Stueve considered and accorded weight to the

opinions of six psychologists in his decision; Dr. Schemmel, Dr. Cohen, Dr. Schulman,

Dr. Neufeld (two separate examination reports), Dr. Pulcher, and Dr. Fantz.  (R. 1851-

53).  Mr. Johnson is not an acceptable medical source within the meaning of the

regulations applicable at the time of the ALJ's decision and, as a case manager, it is likely

he is not a medical source at all.  Although it would have been good for the ALJ to

discover and assign weight to Mr. Johnson's opinion, in these circumstances the court

cannot find reversible error.  As Justice O'Connor noted in her concurrence in <u>Bowen v.</u>

9

Yuckert, 482 U.S. 137, 157 (1987), the Commissioner "faces an administrative task of staggering proportions in applying the disability benefits provisions of the Social Security Act [and p]erfection in processing millions of such claims annually is impossible." The court finds that the ALJ's overlooking a 2-page opinion by a lay case manager in a 2,200-page record with numerous medical opinions which were, in fact, considered and addressed by the ALJ is harmless error.

## IV.    Stale Opinions

Here is Plaintiff's entire argument wherein she first claims error in the ALJ's alleged reliance on stale opinions:

> The last opinion of record given any weight by the ALJ as to [Plaintiff]'s mental functional limitations is that of Dr. Pulcher dated 4/20/15, which the ALJ gave "some" weight. (Tr. 1853). The last opinion of record given any weight by the ALJ as to [Plaintiff]'s physical functional limitations is that of Dr. Tawadros dated 6/25/15, which The [sic] ALJ gave "great" weight and "significant" weight. (Tr. 1839, 1853). These opinions and all others issued prior to that time period, were issued almost 4 years prior (and in some cases, more than 7 years prior) to the ALJ's decision and without benefit of review of the whole of the medical records. One of the factors to be considered in assessing the weight given the opinions of record is the extent to which the opinions consider all the pertinent evidence, including the opinions of treating physicians. 20 C.F.R. [§] 404.1527(c)(3). See Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012) wherein the Court reversed in part because, even with two physical RFC assessments, the court was troubled because of the staleness of one of those assessments, and encouraged the ALJ on remand to obtain an updated exam or report. The Court [sic] should do so here as well.

(Pl. Br. 33-34). Thereafter, Plaintiff suggested several times that this case should be remanded because the ALJ failed his duty to develop the record with updated medical opinions. (Pl. Br. 35, 38, 39) (Reply 1, 8). The Commissioner argues that Plaintiff

"makes no mention of how the existing 2200-page record—which covers seven years of

medical treatment and contains at least 12 opinions by 11 different medical sources

concerning Plaintiff's physical and mental functioning—was deficient." (Comm'r Br.

11). He argues the record is not inadequate to reach a disability decision. Id. at 12-13.

     The court agrees with the Commissioner. Plaintiff misunderstands the Chapo

opinion. There the court determined that remand was necessary because the ALJ erred in

evaluating the unopposed opinion of Dr. Vega regarding the plaintiff's mental abilities.

Chapo, 682 F.3d at 1289-92. The court then addressed the plaintiff's physical RFC. Id.

at 1292-93. It noted that the ALJ had accorded great weight to Dr. Amin's consultative

opinion because he had performed a thorough examination and his findings were

supported by and consistent with the record medical evidence and he accorded no weight

to the treating source opinion of Dr. Krause "because 'he had begun treating the claimant

in the month immediately preceding the hearing' and 'none of his treating records, if any,

are in the medical evidence of record.'" Id. at 1292 (quoting the ALJ's decision). The

court noted that "[t]he relevant medical record obviously underwent material changes in

the twenty months between Dr. Amin's report and the ALJ's decision" and Dr. Krause

had the benefit of review of some of that changed evidence including an MRI. Id. at

1292-93. The court found, however, that the ALJ was justified in rejecting Dr. Krause's

opinion, but that his

     reliance on the patently stale opinion of Dr. Amin remains troubling,
     notwithstanding the rejection of the opposing opinion of Dr. Krause and the
     ALJ's own moderation of the more extreme implications of Dr. Amin's

finding of no limitation with respect to the basic exertional requirements of sitting, standing, walking, and lifting.

Id. at 1293.  The Chapo court then recognized that because it was remanding for reevaluation of Dr. Vega's opinion it "need not make a definitive determination on this question, [and it] encourage[d] the ALJ to obtain an updated exam or report to forestall any potential problem from arising in this respect on remand."  Id.

The Chapo court recognized its evaluation of this issue was mere dicta because it had already determined remand was necessary.  Moreover, the evidence upon which Dr. Amin relied had materially changed in the interim, making Dr. Amin's opinion stale, and "troubling" to the court because of the ALJ's continued reliance on that opinion even though the ALJ had moderated "the more extreme implications" of the opinion.

Here, although the evidence at issue covers a period of nearly eight years and Plaintiff's condition has changed somewhat over that time, the ALJ considered all that evidence before evaluating and according weight to each of the medical opinions and Plaintiff does not point to any evidence compelling a different weight to any of the opinions.  Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical

evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a). Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

Plaintiff's argument implies that an ALJ may not assess RFC without a medical opinion supporting each limitation assessed and, therefore, the ALJ must secure a current medical opinion each time new evidence is added to the record.  That is not the law in the Tenth Circuit.  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion."  Chapo, 682 F.3d at 1288-89 (citing Howard, 379 F.3d at 949; Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011) (emphasis in original).  "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."  Id.  See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.

Later, in arguing that remand is necessary because of stale opinions regarding Plaintiff's mental limitations, Plaintiff cites to three unpublished decisions of the Tenth

Circuit and argues again that this case should be remanded for the ALJ to obtain updated medical opinions.  (Pl. Br. 38) (citing <u>Fleetwood v. Barnhart</u>, 211 F. App'x. 736, 740 (10th Cir. Jan. 4, 2007); <u>Baker v. Barnhart</u>, 84 F. App'x 10, 14 (10th Cir. Dec. 10, 2003); <u>Oslin v. Barnhart</u>, 69 F. App'x 942, 948-949 (10th Cir. July 17, 2003)).  In each of those cases, however, the problem the court found was insufficient evidence to assess an RFC and determine whether the plaintiff was disabled.  Here, on the other hand, the evidence has been fully developed and is sufficient to assess an RFC and determine disability.  That Plaintiff disagrees with the determination made does not change those facts.

The real issue when weighing medical opinions is whether the ALJ's evaluation of the medical opinions is supported by substantial evidence.  But Plaintiff does not argue error in the reasons the ALJ gave for crediting or discounting the various medical opinions.  Rather, she argues the general principle that "the opinions of physicians who did not examine or treat [her] are entitled to the least weight of all" without explaining why the general principle should trump the specific findings of the ALJ here.  (Pl. Br. 34, 37).  Plaintiff argues that "Dr. Tawadros did not at all address [Plaintiff]'s degenerative disc disease; did not find [Plaintiff]'s fibromyalgia to be a 'severe' impairment as the ALJ did; and did not find [Plaintiff]'s knee impairment to be medically determinable as the ALJ did."  (PL. Br. 34-35).  This argument does not fully reflect Dr. Tawadros's evaluation.  Dr. Tawadros addressed each of Plaintiff's alleged impairments in a list numbered 1 through 6.  (R. 896-97).  Although she did not use the terminology Plaintiff uses, she addressed each of these impairments.  Number 2 was "fibromyalgia," no. 3 was

14

"herniated discs" wherein Dr. Tawadros explained she found it not medically determinable because Plaintiff did not seek treatment for back pain, and Dr. Paksaresht's exam revealed mild decreased range of motion, no evidence of muscle spasm, she could bend three inches to the floor, her gait was normal, and she had only mild difficulty with orthopedic maneuvers.  Id.  Impairment no. 5 was "no cartilage in knees" which Dr. Tawadros found not medically determinable because Dr. Paksaresht's exam showed only mildly decreased flexion, normal gait, and no inflammatory changes or deformity.  Id. at 897.  Moreover, as Plaintiff's very argument tacitly admits, the ALJ addressed her degenerative disc disease and found her fibromyalgia severe and her knee impairment medically determinable.  (R. 1838).

Plaintiff also argues that the opinions of non-treating and non-examining sources are of suspect reliability and are not substantial evidence to support an ALJ's decision. (Pl. Br. 37).  However, once again she has cited a rule from a past case without explaining how that "rule" should be applied in the facts of this case.  Plaintiff has shown no error in the ALJ's weighing of the allegedly stale medical opinions in the record.

## V.    Physical RFC Limitations

Plaintiff argues that the ALJ's physical RFC is unsupported by the record evidence because he failed to include restrictions resulting from impairments he found—frozen left shoulder, right shoulder impingement, and left peroneal tendinitis.  (Pl. Br. 35-36).  She argues "the ALJ should have included some limitations on [Plaintiff]'s ability to reach due to her limited range of motion, reduced strength, and pain;" should have included an

intermittent restriction to wear a walking boot; and should have included additional limitations in walking due to arthralgia (pain in a joint) in her feet. Id. at 36. The Commissioner argues Plaintiff failed to carry her burden to prove additional limitations are necessary in this regard. (Comm'r Br. 13). He points out that the ALJ did not find Plaintiff's abilities to use her extremities were unlimited and that, other than the suggestion to wear a walking boot intermittently, no medical source provided greater restriction than did the ALJ. (Comm'r Br. 13-14).

As the Commissioner points out, the ALJ did not find Plaintiff's use of her extremities was unlimited. Rather, he found

> she is able to lift 20 pounds occasionally, and lift or carry 10 pounds frequently. She is able to stand or walk for 6 hours and sit for up to 6 hours per 8-hour workday. She can frequently handle with her non-dominant left upper extremity. She can frequently finger bilaterally.

(R. 1842) (finding no. 5, bold omitted). Moreover, the burden of proof in a Social Security disability case is on the plaintiff and although Plaintiff cites to record medical evidence in making her arguments in this regard (Pl. Br. 35-36), she does not point to record evidence compelling the assessment of limitations greater than those assessed by the ALJ or compelling the conclusion the ALJ's assessment is erroneous.

At best, Plaintiff's citation to this evidence suggests the court should reweigh this evidence, reach a judgment different than did the ALJ, and substitute its judgment for that of the ALJ. As noted supra at 4-5, the court may not do so. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.

16

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). The court does recognize that Plaintiff cites to record evidence that she was examined by Dr. Vopat for occasional left ankle pain about two to three times a week.  (R. 2186).  Dr. Vopat recommended "she use intermittent boot as needed as well as Voltaren gel.  If she has increased issues in the future she can give me a call."  <u>Id.</u>  The court notes that Dr. Vopat did not use the term "walking boot" in his recommendation and the treatment notes for that encounter reveal no medical orders prescribing a medical walking boot.  <u>Id.</u> at 2186-91.  Leaving that issue aside, Plaintiff has not shown in what way intermittent use of a medical walking boot, or any boot, would impose limitations greater than those assessed by the ALJ or would preclude performance of the representative jobs relied upon.  Plaintiff has not shown greater physical limitations are required.

## VI.    Mental RFC Limitations

Plaintiff argues that the ALJ found she has moderate limitations in concentration, persistence, or pace and has difficulty completing tasks in a timely manner, and he accorded significant weight to Dr. Schulman's report which opined that she "may experience some lapses in attention or concentration depending on her level of pain," but

the ALJ "failed to account for these limitations in the RFC" assessed.  (Pl. Br. 39).  The

Commissioner argues Plaintiff again did not carry her burden.  He argues that the ALJ

assessed a "highly restrictive mental RFC" which accounted for all her mental

limitations.  (Comm'r Br. 16).

The ALJ discussed his evaluation of Plaintiff's moderate limitation in the basic

mental functional area of concentrating, persisting or maintaining pace:

> With regard to concentrating, persisting, or maintaining pace, the claimant
> has a moderate limitation.  This area of mental functioning refers to the
> claimant's ability to focus attention on work activities and stay on task at a
> sustained rate.  Another consultative psychological examiner, Todd A.
> Schemmel, Ph.D., opined on January 20, 2012 that the claimant's attention
> span and concentration were adequate (Ex. 9F/2).  Dr. Neufeld opined on
> September 24, 2012 and March 7, 2014 that the claimant could adequately
> understand and remember simple instructions and sustain concentration,
> persistence and pace in a work setting (Ex. 21F/4: 32F/4).  Dr. Pulcher
> opined on April 20, 2015 that the claimant is able to carry out simple and
> intermediate level instructions (Ex. 42F/5).  The claimant reported in her
> first two function reports that she can pay attention for a "normal amount of
> time," but in her third function report she stated that she can only pay
> attention for "30 minutes if it is a good day" (Ex. 6E/8; 11 E/8; 22E/9).  She
> also reported in her third function report that between her depression and
> the "brain fog" caused by her fibromyalgia, her "mind is always jumbled
> up" and she can't think (Ex. 22E/4).  The overall evidence in the record
> shows that the claimant has some difficulty in sustaining focus, attention,
> and concentration to complete tasks in a timely manner, but not to the
> extent that she is precluded from carrying out detailed but uninvolved
> instructions to perform simple, routine, and repetitive tasks involving only
> simple, work-related decisions, with few, if any workplace changes.

(R. 1840-41).  He assessed Plaintiff's mental RFC:

> she is able to carry out detailed but uninvolved instructions to perform
> simple, routine, and repetitive tasks, involving only simple work-related
> decisions, with few, if any, workplace changes.  She can tolerate no
> interaction with the public.  She can tolerate a low level of work pressure

defined as work not requiring multitasking, significant independent
judgment, sharing of job tasks, or contact with the public.

(R. 1842) (finding no. 5, bold omitted). He stated that Dr. Schulman "rendered the same

opinions as Dr. Cohen regarding the claimant's mental functional capabilities and

limitations" and accorded it significant weight as he had done for Dr. Cohen's opinion

(R. 1852) which he had previously explained:

> Dr. Cohen opined that the claimant is moderately limited in her ability to
> carry out detailed instructions, and moderately limited in her ability to
> maintain attention and concentration for extended period [sic] depending on
> her level of physical pain, but that she is capable of completing simple
> tasks. Dr. Cohen opined that the claimant's ability to get along with
> coworkers or peers is not significantly limited, but that her ability to
> interact with the general public is moderately limited. Dr. Cohen opined
> that the claimant "may have difficulty dealing with the stress associated
> with working with the public." I give significant weight to Dr. Cohen's
> opinions because they are supported by the relevant medical records in
> evidence and consistent with the overall evidence in the record.

(R. 1851).

As Plaintiff asserts, the ALJ accorded significant weight to Dr. Schulman's

opinion and Dr. Schulman opined that Plaintiff "may experience some lapses in attention

or concentration depending on level of pain." (R. 98). However, Plaintiff ignores the

very next statement in Dr. Schulman's explanation of Plaintiff's concentration and

persistence limitations—"she can complete simple tasks." Id. The ALJ's RFC limitation

"to perform simple, routine, and repetitive tasks, involving only simple work-related

decisions, with few, if any, workplace changes" (R. 1842) (emphasis added), is clearly a

limitation which accounts for Dr. Schulman's opinion Plaintiff may experience some

lapses because of pain. Plaintiff has not demonstrated otherwise.

Moreover, although the ALJ's step three evaluation of Plaintiff's concentration, persistence, or maintaining pace as quoted above recognized Plaintiff "has some difficulty in sustaining focus, attention, and concentration to complete tasks in a timely manner," the rest of that very sentence, apparently ignored by Plaintiff, explains "but not to the extent that she is precluded from carrying out detailed but uninvolved instructions to perform simple, routine, and repetitive tasks involving only simple, work-related decisions, with few, if any workplace changes." (R. 1840-41). Clearly the ALJ thought the RFC he assessed had accounted for the limitation and Plaintiff points to no evidence compelling a different conclusion. Plaintiff has not shown greater mental limitations are required.

## VII.   Conflict Between VE Testimony and the DOT

Plaintiff claims remand is necessary because the ALJ erroneously relied upon VE testimony which conflicts with information in the DOT in two respects. First, she argues the ALJ assessed an RFC which precludes sharing of job tasks but the VE testified, conflictingly, that an individual with the RFC assessed would be able to perform the job of a small parts assembler which requires work at a "bench as [a] member of [an] assembly group assembling one or two specific parts and passing unit to another worker." (Pl. Br. 40) (quoting the job description of a small parts assembler (DOT 706.684-022)). Second, she argues that on remand ALJ Stueve "merely inserted in the RFC a provision that [Plaintiff] could carry out detailed but uninvolved instructions" instead of resolving the conflict the court found in the second case involving this Plaintiff. Id. at 41-42.

20

The Commissioner argues regarding the first alleged error, "even if Plaintiff is arguably correct that [a small parts assembler's] duties conflict with the RFC, the ALJ identified two other jobs Plaintiff could perform as well, and she has not identified any concerns that would eliminate the other two jobs." (Comm'r Br. 19).  Regarding the second alleged error, he argues the ALJ was not bound by the findings of the ALJ in the second decision.  Id. at 20 (citing Hearings, Appeals, and Litigation Law manual (HALLEX) I-2-8-18, 1993 WL 643058 (SSA May 26, 2017)).  He concludes,

> Because the current ALJ propounded to the vocational expert a hypothetical question that encompassed all of Plaintiff's supported functional limitations, and the expert testified that an individual with those limitations could perform work existing in the national economy, the ALJ could rely on the vocational expert's testimony to find Plaintiff not disabled.

Id. at 21 (citing Smith v. Colvin, 821 F.3d 1264, 1270 (10th Cir. 2016)).

In her Reply Brief Plaintiff argues that for the court to determine that the jobs other than small parts assembler constitute a significant number of jobs would involve judicial line drawing which the Tenth Circuit has found is inappropriate.  (Reply 12-13) (Citing Chavez v. Barnhart, 126 F. App'x 434, 436 (10th Cir. Feb. 3, 2005)).  Finally, she argues the Commissioner's assertion that the current ALJ was not bound by the second ALJ's findings ignores Dr. Cohen's, Dr. Schulman's and Dr. Neufeld's opinions regarding Plaintiff's abilities to understand, remember, and carry out instructions and to perform tasks, to all of which the ALJ accorded significant weight.  (Reply 13-14).

### A.      Standard to Evaluate Conflict between VE Testimony and the DOT

In November 1999, the Tenth Circuit Court of Appeals decided that before an ALJ may rely on VE testimony, he "must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony." Haddock, 196 F.3d at 1091. The court explained that the DOT does not "trump" VE testimony, but the ALJ has a duty to investigate and get a reasonable explanation before he may rely on the testimony. Id.

Thereafter, the Commissioner published SSR 00-4p, effective December 4, 2000. West's Soc. Sec. Rep. Serv., Rulings, 242 (Supp. 2019). In SSR 00-4p, the Commissioner established a policy interpretation for the use of VE testimony and "Other Reliable Occupational Information in Disability Decisions." Id. at 243. In the ruling, the Commissioner placed two duties on the ALJ. First, the ALJ must "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs ... and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)." Id. (emphasis added).

Second, the ALJ was given the duty to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." Id. Ruling 00-4p places the affirmative responsibility on the ALJ to "[a]sk the VE ... if the evidence he or she has provided conflicts with information provided in the DOT," and where VE "evidence appears to conflict with the DOT, ... [to] obtain a reasonable explanation for the apparent conflict." Id. at 246.

**B.**   **Small Parts Assembler**

22

As Plaintiff's Brief quotes, the DOT job description for Small Parts Assembler includes that such an individual "[f]requently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker." DOT 706.684-022, 1991 WL 679050, DICOT 706.684-022.  However, Plaintiff has not shown that working "at bench as member of assembly group" or "passing unit to another worker" violates the RFC's prohibition of "sharing of job tasks."  (R. 1842) (bold omitted).  While it <u>might</u> be understood from the job description that the assembly group at issue is assembling one or two specific parts <u>as a team</u> (sharing job tasks), it <u>might also</u> be understood (and the court views this as the more natural reading) that the individual is sitting at the assembly group bench, assembling one or two specific parts <u>individually</u>, and then passing the unit to another worker.  The RFC assessed precludes interaction with the <u>public</u> but does not limit interaction with supervisors or with coworkers other than prohibiting <u>sharing job tasks</u>.  <u>Id.</u>  Here, the VE was given a hypothetical question including the RFC assessed which included "not requiring … the sharing of job tasks." (R. 1892).  Given that hypothetical, the VE testified that such an individual would be able to perform the job of small parts assembler.  <u>Id.</u>  She was later asked if her testimony had "been consistent with the <u>Dictionary of Occupational Titles</u>," and she responded that it had.  (R. 1894).  While the record might support Plaintiff's argument in theory, in the facts of this case, given the RFC assessed, the limitations presented to the VE, the testimony of the VE, and the fact that the VE is an expert in vocational matters, the court finds no conflict.  <u>See</u> <u>e.g.</u>, <u>Page v. Astrue</u>, 484 F. 3d 1040, 1045 (8th Cir. 2007) ("a

claimant's 'reliance on the <u>DOT</u> as a definitive authority on job requirements is misplaced' because '<u>DOT</u> definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range.'")).

### <u>C.</u>      <u>Carry Out Detailed But Uninvolved Instructions to Perform Simple, Routine, and Repetitive Tasks</u>

As quoted <u>supra</u> at 18, the ALJ noted that Dr. Schemmel opined that Plaintiff's attention span and concentration were adequate (R. 450), but he accorded little weight to his opinion that Plaintiff "is unable to understand/follow simple instructions." (R. 1840, 1851). Dr. Neufeld opined that Plaintiff could adequately understand and remember simple instructions and sustain concentration, persistence and pace in a work setting (R. 524, 789) and the ALJ accorded his opinions significant weight. (R. 1851, 1852). Dr. Pulcher opined that Plaintiff can carry out simple and intermediate level instructions (R. 1418) and the ALJ accorded some weight to this opinion but noted Plaintiff "is more mentally functionally limited than as opined by Dr. Pulcher." (R. 1853). The ALJ noted that Dr. Cohen opined that Plaintiff "is moderately limited in her ability to carry out detailed instructions, and moderately limited in her ability to maintain attention and concentration for extended period depending on her level of physical pain, but that she is capable of completing simple tasks" and he accorded this opinion significant weight. (R. 1851). He noted Dr. Schulman expressed the identical opinion and he accorded it identical weight. (R. 1852). Finally, he noted Dr. Fantz opined Plaintiff's mental impairments are not severe and he accorded that opinion little weight. (R. 1853). The ALJ concluded Plaintiff can carry out detailed but uninvolved instructions to perform

24

simple, routine, and repetitive tasks involving only simple, work-related decisions, with few, if any workplace changes.  (R. 1841).  Given this RFC assessed by ALJ Stueve, the VE testified Plaintiff would be able to perform three representative, light, SVP 2 jobs; inserting machine operator DOT 208.685-018, routing clerk DOT 222.687-022, and small part assembler DOT 706.684-022.  Each of these jobs is reasoning level 2.

ALJ Cooke in the first ALJ decision found Plaintiff "should never be expected to understand, remember, or carry out detailed instructions" and her "[j]ob duties must be simple, repetitive, and routine" (R. 866) based on according partial weight to Dr. Cohen's and Dr. Schulman's opinions (R. 870), little weight to Dr. Schemmel's opinion (R. 870), and significant weight to both of Dr. Neufeld's opinions.   (R. 871, 872).  Given this mental RFC the first VE testified and ALJ Cooke accepted that Plaintiff would be able to perform three light jobs with an SVP of 2; weight recorder DOT 222.387-074, router DOT 222.587-038, and folding machine operator DOT 208.685-014.  (R. 875).  As the first court to consider Plaintiff's cases recognized, these three jobs are reasoning level two or three, and in fact, router and folding machine operator are reasoning level 2 whereas weight recorder is reasoning level 3.

In the second decision ALJ Comisky found Plaintiff "can understand, remember, and carry out work instructions and tasks at an SVP 2 level" (R. 1906) based on according no weight to Dr. Schemmel's opinion (R. 1913), great weight to both of Dr. Neufeld's opinions (R. 1914), and significant weight to Dr. Pulcher's opinions, but only "to the extent they are consistent with Dr. Neufeld's opinions," specifically noting he

accorded greater weight to Dr. Neufeld's opinions.  (R. 1915).  He also noted he accorded

substantial weight to the opinions of Dr. Cohen and Dr. Schulman.  (R. 1915).  Given this

mental RFC, the VE at the second hearing testified and ALJ Comisky accepted that

Plaintiff would be able to perform three light representative jobs with an SVP of 2;

collator operator DOT 208.685-010, mail clerk DOT 209.687-026, and router DOT

222.587-038.  (R. 1917).  As noted supra at 3 the mail clerk job is reasoning level 3 and

the other two are reasoning level 2.

As Plaintiff clearly noticed and relies upon, three different ALJs in these three

cases performed remarkably similar analyses based upon the same opinions and

increasing amounts of evidence and came to remarkably similar conclusion resulting in

assessment of remarkably similar mental RFCs which, when propounded to three

different vocational experts resulted in remarkably similar light, SVP 2, reasoning level 2

and 3 representative jobs.  This court does not find that to be a random, coincidental,

alarming, or surprising occurrence.  Nor does it find the occurrence to be erroneous,

unsupported by the record evidence, or otherwise nefarious.

### 1.   *Legal Standard Applicable*

The ability to perform unskilled work is dependent more upon the SVP level of the

work as recorded in the DOT than it is upon the reasoning level.  The regulations define

"unskilled work:"

> Unskilled work is work which needs little or no judgment to do simple
> duties that can be learned on the job in a short period of time. The job may
> or may not require considerable strength.  For example, we consider jobs

> unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and <u>a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed</u>.  A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568, 416.968 (emphasis added).  The court also notes that VEs are experts in the evaluation of vocational terms not laymen, attorneys, or even courts.

> The DOT defines SVP:
>
> Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.
>
> This training may be acquired in a school, work, military, institutional, or vocational environment. It does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job. Specific vocational training includes: vocational education, apprenticeship training, in-plant training, on-the-job training, and essential experience in other jobs.

DOT, App'x C, II, <u>available online at</u>: <u>https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC</u> (last visited Aug. 25, 2020).  There are nine SVP levels which are mutually exclusive, do not overlap, and range from level 1, "Short demonstration only" to level 9, "Over 10 years."  <u>Id.</u>  The time required for SVP 1 is "Short demonstration only" and for SVP 2 is "Anything beyond short demonstration up to and including 1 month."  <u>Id.</u>

Reasoning level, on the other hand is defined in the DOT as one of three divisions in the General Educational Development (GED) Scale.  <u>Id.</u> at III.  GED is also defined in the DOT:

> General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective.  Ordinarily, such education is obtained in elementary school, high school, or college.  However, it may be obtained from experience and self-study.
>
> The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.

<u>Id.</u> App'x C, III.  The GED reflects 6 levels each, of Reasoning Development, Mathematical Development, and Language Development.  <u>Id.</u>  As relevant to the reasoning levels applicable to the representative DOT occupations testified by the VEs in the three hearings evidenced in this record and relied upon by ALJ Cooke, ALJ Comisky, and ALJ Stueve, the court quotes the DOT definition of Reasoning Development Levels 1, 2, and 3:

> 01 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

<u>Id.</u> available at: https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/ DOTAPPC (last visited August 25, 2020).

> 02 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

<u>Id.</u>

> 03 LEVEL REASONING DEVELOPMENT

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.

Id.  The Tenth Circuit has held that a mental RFC limited to "the attention, concentration, persistence and pace levels required for simple and routine work tasks" is inconsistent with the demands of level-three reasoning.  Hackett, 395 F.3d at 1176 (quoting the RFC assessed for Ms. Hackett, and citing Lucy v. Chater 113 F.3d 905, 909 (8th Cir. 1997)).  The court went on to note that "level-two reasoning appears more consistent with [Ms. Hackett's] RFC."  Id.

### 2.   *Analysis*

As a preliminary matter, the court notes that although ALJ Cooke and ALJ Comisky each relied on a representative job requiring reasoning level three, the representative jobs relied upon by ALJ Stueve in this case are all reasoning level two: inserting machine operator DOT 208.685-018, routing clerk DOT 222.687-022, and small part assembler DOT 706.684-022.  (R. 1856).  Because one of the representative jobs in each of the earlier cases were reasoning level three, Hackett is binding precedent which required those courts to find a conflict and remand for the Commissioner to consider and resolve the conflict.  Here, however, there is no reasoning level three job and there can be no argument that the holding of Hackett requires finding the VE testimony conflicts with information in the DOT.  However, Plaintiff argues that based on the opinions of Dr. Cohen, Dr. Schulman and Dr. Neufeld ALJ Cooke found her unable to understand, remember, or carry out detailed instructions and ALJ Comisky found she can understand,

remember, and carry out work instructions and tasks at an SVP 2 level, but here ALJ Stueve merely changed the RFC wording to find that she can carry out detailed but uninvolved instructions.  She argues this is merely a sleight of hand because the psychologists' opinions upon which he relied were the same as those upon which ALJ Cooke and ALJ Comisky relied, and those opinions preclude such a change.  To the extent Plaintiff is making an argument based on the doctrine of law of the case, she is not correct because the previous district court decisions remanded based upon sentence four of 42 U.S.C. § 405(g), judgment was entered, and this case is a judicial review of a separate decision by a different ALJ based upon a different record even though a great deal of the former record constitutes a portion of the evidence in this case.

Nevertheless, the crux of Plaintiff's argument lies in the fact the two earlier cases were remanded because there was a conflict between the VEs' testimony Plaintiff could perform reasoning level 2 and 3 jobs and the RFC limitations the ALJs assessed which were perceived to limit her to simple instructions.  This is revealed in her argument, "Had the ALJ properly found [Plaintiff] limited to simple instructions rather than detailed instructions as indicated by the substantial evidence, none of the jobs identified by the VE would be available to [her] as they all require the ability to carry out detailed instructions."  (Pl. Br. 42-43).

That argument is based upon the plain-language difference between reasoning level one's requirement "to carry out <u>simple</u> one- or two-step instructions" and reasoning level two's requirement "to carry out <u>detailed</u> but uninvolved written or oral

instructions."  The problem with Plaintiff's rationale is that it assumes the further

rationale that "simple … instructions" in the DOT definition of "01 Level Reasoning"

must be equivalent to the abilities "to understand and remember very short and simple

instructions" and "to carry out very short and simple instructions" in an RFC and that

"detailed but uninvolved … instructions" in the DOT definition of "02 Level Reasoning"

must be equivalent to the abilities "to understand and remember detailed instructions"

and "to carry out detailed instructions" in an RFC.  But Plaintiff presents no appropriate

authority for either rationale.

GED, and thus reasoning level, relates to the amount of education (formal or

informal) an occupation requires.  "Reasoning development" is one of three divisions of

educational development, and reasoning level one and reasoning level two relate to

occupations which require the lowest two levels of educational development in reasoning.

While it might be reasonable for a layman, an attorney, or a court to conclude from the

plain language of the DOT definition of 01 level reasoning development that the

educational development necessary "to carry out simple … instructions" is equivalent

with the mental abilities "to understand and remember very short and simple instructions"

and to "carry out very short and simple instructions," and to conclude from the plain

language of the DOT definition of 02 level reasoning development that the educational

development necessary "to carry out detailed but uninvolved written or oral instructions"

requires the mental abilities "to  understand and remember detailed instructions" and "to

carry out detailed instructions," Plaintiff cites no authority requiring it.

31

Reasoning level in the DOT relates to the educational background a particular occupation requires whereas mental abilities in a Mental Residual Functional Capacity Assessment represent 20 mental functional abilities grouped in 4 categories—Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation.  Program Operations Manual System (POMS) DI 24510.060(B)(2) available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 (last visited August 25, 2020).  The ability to understand and remember instructions and the ability to carry out instructions fall within the categories of Understanding and Memory, and of Sustained Concentration and Persistence, respectively.  (R. 97-98); see also POMS DI 24510.060(B)(2).  While educational requirements and mental abilities intuitively appear to be related, Plaintiff has shown no direct correlation, the regulations as quoted above specifically relate unskilled work to SVP levels 1 or 2 rather that GED reasoning development levels, neither Dr. Cohen and Dr. Schulman nor Dr. Neufeld stated a correlation between his or her opinion regarding Plaintiff's mental abilities and the DOT GED reasoning levels, but the VE stated that an individual with the Mental RFC assessed by ALJ Stueve would be able to perform the representative jobs relied upon by the ALJ, and testified that her testimony was consistent with the DOT.  (R. 1894).  Plaintiff may not create a conflict based upon her or her attorney's lay reading of the DOT in opposition to the testimony of a vocational expert.

Plaintiff's implied reliance upon the earlier district court decisions in her past cases is unavailing because in each of those cases the VE and the ALJ relied upon a

representative job which required reasoning level three and the binding precedent of

Hackett requires remand in such a case even if the district court were to find that the

rationale above also applies to reasoning level three.  To the extent those courts also

applied their holdings to reasoning level two jobs, this court is unpersuaded by that

rationale, as discussed above.

The court finds no error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 27, 2020, at Kansas City, Kansas.




s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**